In the Matter of Zariyasta S. and Another, Children Alleged to be Abused and Neglected. Commissioner of Social Services, Appellant, Vivian D. et al., Respondents.

First Department, June 26, 1990

## APPEARANCES OF COUNSEL

*Linda H. Young* of counsel *Ellen B. Fishman* with her on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for appellant.

*Esther I. Stackell* for Vivian D., respondent.

*Samuel I. Ackerman* for Pa D., respondent.

*Janet R. Fink* of counsel *(Kim Chisolm* with her on the brief; *Lenore Gittis,* attorney), for infant children.

## OPINION OF THE COURT

KASSAL, J.

■ ■ The issues presented in this appeal concern the application of evidentiary burdens of proof in child abuse and neglect proceedings. For the reasons that follow, we hold that the Family Court was correct in its dismissal of the claims of sexual abuse, but that it erroneously applied the standard for termination of parental rights in dismissing the petition insofar as it alleged neglect based upon mental illness.

On March 6, 1989, petitioner-appellant, Commissioner of Social Services, filed a petition in Family Court, New York County, alleging the abuse and neglect of Zariyasta S. and Bennie I. D., then respectively 10 years and 4 months of age, against respondent mother, Vivian D., and respondent stepfather of Zariyasta and father of Bennie, Pa D. The petition cited Zariyasta's statement that her stepfather had sexually abused her two years earlier, and the evidence, revealed upon a vaginal examination of the child conducted at Bellevue Hospital on February 23, 1989, of digital penetration. The petition further alleged that respondent mother knew or should have known of the sexual abuse, and that she had failed to take sufficient action to protect her daughter. On the basis of this information, the younger child, Bennie, was also alleged to be an abused and neglected child.

In addition, the petition stated that respondent mother had suffered a manic-psychotic episode and was, at the time of its filing, hospitalized for psychiatric observation and evaluation. Finally, the petition asserted that the children would be at risk with either their mother or respondent stepfather, who was alleged to have left them in the care and custody of his wife despite his awareness of her mental illness. The children were removed from the home pursuant to Family Court Act

§ 1024, and a fact-finding hearing was held on October 18, and 19, 1989.

■ Upon review of the record, we conclude that the hearing court properly found that the Commissioner failed to meet his burden of proof with respect to the allegations of sexual abuse against respondent stepfather, which must be established by a preponderance of the evidence. *(See,* Family Ct Act § 1046 [b]; *Matter of Tammie Z.,* 66 NY2d 1.) The child's statements regarding the single incident, occurring two years earlier, were vague and conflicting, and, when interviewed in camera, she insisted that her stepfather's conduct consisted of a "little light touch" over her pajamas, and that there had been no penetration. In addition, the child stated that she "thought it was just like my dreams".

However, in light of the medical evidence conclusively establishing that the child had been sexually abused, we once again have occasion to caution that, "though the evidence was insufficient to determine the identity of the perpetrator, it does disclose that the abuse likely occurred during the period in which her father had custody of the child" and, therefore, "the safer course is not to return the child to the father". *(Matter of Ruth McI.,* 140 AD2d 255.) In this context, we note that the respondent parents have separated and that respondent father has removed himself from the marital home.

■ Turning to the allegations of neglect based upon respondent mother's mental illness, we find, upon examination of this record, that it was error for the hearing court to have granted respondents' motions to dismiss for failure to establish a prima facie case. In so ruling, the court held that it could not make a finding of mental illness on the basis of hospital records submitted into evidence "without having an expert testify as to what that mental illness is, how long the mental illness existed, and whether it will continue for the foreseeable future". This determination was apparently predicated upon an erroneous application of the standard for termination of parental rights set forth in Social Services Law § 384-b (4) (c), which requires that the mentally ill parent must be unable to provide proper and adequate care for the child or children "presently and for the foreseeable future". *(Matter of Susan F.,* 106 AD2d 282, 283.) Before parental rights may be terminated on such grounds, the court must hear testimony from a psychiatrist. (Social Services Law § 384-b [6] [e].)

However, where the court is deciding a neglect petition, as in the case at bar, the consequences of the proceedings are temporary rather than permanent, and expert testimony is not required. Thus, in *Matter of Danielle M.* (151 AD2d 240, 243), we held that "the absence of a diagnosed condition does not preclude a finding of neglect, and [that] where the preponderance of the evidence indicates a likelihood that the child's physical, mental or emotional condition will be impaired, such a finding is warranted." The appropriate inquiry is whether the behavior constitutes conduct toward the child "requiring the aid of the court" (Family Ct Act § 1012 [f] [i] [B]), and what must be considered is "the threat to the child's well-being, not the formal diagnosis of the condition from which the threat emanates". *(Matter of Danielle M., supra; see also, Matter of Tammie Z., supra, at 3-4.)*

Here, the evidence of the mother's bizarre behavior and delusional ideation was ample and compelling. Three witnesses testified as to various acts indicating bizarre behavior and delusions on the part of the mother, and documentary medical evidence of her condition was before the court. The testimony described the mother's agitated state, frantic speech, and contentions that spirits spoke to her, that she had a "special gift" permitting her to divine many things, including who killed John F. Kennedy and Marilyn Monroe, and that her son was destined to be President of the United States and the director of Islam. Respondent mother had also falsely reported that her daughter had been kidnapped and that her daughter's teacher had twice been raped in front of the class, and charged that various neighbors had sexually abused their children. In addition to this testimony, medical records from the New York Psychiatric Institute established that the respondent mother had been diagnosed as suffering from chronic paranoid-schizophrenia and a long-standing system of fixed, grandiose delusions. Significantly, Dr. Maria Oquendo wrote, in a certification for further hospitalization, as follows:

"Of utmost concern is the fact that [respondent] has in the past suspected her husband of molesting her daughter but because of her psychosis is unable to admit this now or take necessary measures to protect the child. * * *

"Because of her psychosis and the extent to which it impairs her judgment, this patient would be placing herself at risk as well as her children."

On the basis of this record, we hold that the evidence was

sufficient to establish a prima facie case of respondent mother's inability to provide proper supervision and guardianship to her children.

Accordingly, the order, Family Court, New York County (Sheldon Rand, J.), entered October 19, 1989, which dismissed the allegations of neglect based on mental illness, for failure to make out a prima facie case, and which, further, dismissed the petition, insofar as it alleged abuse, after a full fact-finding hearing, for failure of proof by a preponderance of the evidence, should be modified, on the law and facts, to reinstate the allegations of neglect, and otherwise affirmed, and the matter remanded for further proceedings, without costs.

ROSENBERGER, J. P., ELLERIN, SMITH and RUBIN, JJ., concur.

Order, Family Court, New York County, entered on or about October 19, 1989, unanimously modified, on the law and the facts, to reinstate the allegations of neglect, and otherwise affirmed, and the matter remanded for further proceedings, without costs and without disbursements.