■ In the Matter of WILBUR O., Respondent, v CHRISTINA P., Appellant. (Proceeding No. 1.) In the Matter of WILLIAM O. and Another, Children Alleged to be Neglected. DELAWARE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; CHRISTINA P. et al., Appellants. (Proceeding No. 2.) [632 NYS2d 259] —Peters, J. Appeals (1) from an order of the Family Court of Delaware County (Estes, J.), entered April 27, 1994, which granted petitioner's application, in a proceeding (No. 1) pursuant to Family Court Act article 6, for sole legal custody of the parties' minor children, and (2) from an order of said court, entered April 27, 1994, which granted an order of protection.

Appeals (1) from an order of the Family Court of Delaware County (Estes, J.), entered April 27, 1994, which granted

petitioner's application, in a proceeding (No. 2) pursuant to Family Court Act article 10, to adjudicate William O. and Jessica O. as neglected children, and (2) from an order of said court, entered April 27, 1994, which granted an order of protection.

William O., born in 1981, and Jessica O., born in 1983, are the children of petitioner Wilbur O. and respondent Christina P., who divorced in May 1989. Pursuant to a separation agreement, the parties stipulated that Christina would have custody of the children and Wilbur would have liberal visitation. Thereafter, Wilbur exercised frequent and consistent visitation, notwithstanding his later move to Connecticut where he became employed as a recruiter for the U.S. Naval Reserve. In April 1990, Christina married respondent Allan P. Both are active members of the Jehovah's Witness faith and therefore they raised the children in accordance with such beliefs.

In 1991, following a contested hearing, custody of the children was awarded to Christina with alternate weekend and holiday visitation continued with Wilbur. At that time, there were no allegations of mental illness or impairment concerning either Christina or Allan. However, from 1990 through 1992, Christina and Allan routinely threw away various items that the children brought back with them after visits with Wilbur, believing that the items were possessed by demons and potentially the source of what they perceived as the children's "misbehavior". In January 1992, Christina admitted herself to a hospital for treatment of "flashback memories" of childhood physical, sexual and emotional abuse. She was diagnosed with posttraumatic stress disorder and psychotherapy was recommended.

From the spring through summer of 1992, Christina began to have extensive flashbacks of alleged satanic ritualistic abuse perpetrated upon her by her father. Her flashbacks later included a recounting of such abuse by Wilbur. Her last series of satanic ritual flashbacks were of Wilbur abusing the children. These alleged repressed memory episodes occurred in the presence of the children on several occasions. Testimony revealed, however, that Allan attempted to prevent the children from witnessing their mother experience them. During this period, the children never stated that they had been victims of any abuse and certainly not the abuse described by Christina. Thus, they continued to visit regularly with Wilbur.

In September 1992, Christina and Allan unilaterally terminated Wilbur's visitation with the children. Notwithstanding the children's protest and without giving a reason for

their decision, they changed their telephone number and would not give it to the children for fear that they would tell Wilbur. Thereafter, William and Jessica became very depressed and William even spoke of committing suicide. In October 1992, Allan and Christina brought the children to a mental health clinic. The clinic notes reveal that the family had "a strong sense of suicidal ideation" and that William was extremely depressed. It further revealed Christina's belief that Wilbur was involved in satanic rituals. While notes from William's therapy session recounted his depression, there was no mention of any satanic rituals.

In November 1992, William told his therapist that Christina had performed a muscle testing technique on him which resulted in the release of "memories" of acts of ritualistic satanic abuse perpetrated upon him by his father. From this time forward, William and then Jessica began to detail more elaborate memories of satanic ritualistic abuse perpetrated upon them by Wilbur and others. Both Allan and Christina spoke extensively with the children regarding these memories and assisted the children in keeping journals recounting them.[1] Allan and Christina thereafter fled with the children to Canada for a short period and, in December 1992, Allan attempted suicide. From December 1992 through May 1993, the children were taken to a Jehovah's Witness counselor, Michael St. Jean, who allegedly encouraged the children to maintain their journals. In May 1993, terminating the sessions with St. Jean for financial reasons, the children were brought to a psychiatric social worker, Ina Smith, who treated them through November 1993.

In June 1993, still having no contact with his children, Wilbur filed the petition in proceeding No. 1 pursuant to Family Court Act article 6 seeking custody. Based upon Wilbur's petition recounting the children's flashbacks, petitioner Delaware County Department of Social Services (hereinafter DSS) commenced an investigation of Christina and Allan. As a result thereof, the children recounted various disturbing memories to DSS caseworkers which were uncorroborated by physical or medical evidence. Wilbur was also investigated based on the children's allegations, but the allegations were determined to

---

1.  The journals purport to recount, through the children's alleged multiple personalities, bizarre and disturbing "recollections" of satanic cult rituals, demonic possessions, murder, cannibalism, the burial of dead bodies, torture, and physical and sexual abuse.

be unfounded. In July 1993, the children were placed in foster care on an emergency removal.

Following their removal, testimony revealed that the children ceased to have flashbacks and expressed confusion as to why they ever made such allegations.[2] They thereafter stated that the allegations were as a result of suggestions made by both Christina and Allan and asserted, unequivocally, that Wilbur never abused them in any way and that they were never subjected to the satanic ritual abuse previously reported. In July 1993, Wilbur was permitted to resume visitation with the children.

On July 9, 1993, DSS filed the neglect petition in proceeding No. 2 against Christina and Allan pursuant to Family Court Act article 10. The custody and neglect petitions were joined for a fact-finding hearing during which *Lincoln* hearings were conducted. Family Court adjudicated William and Jessica to be neglected and placed them with Wilbur prior to his eventual award of custody following a dispositional hearing.[3]

Both Christina and Allan contend on these appeals that there is no evidence to support the conclusion that the "mental or emotional condition [of the children] has been impaired or is in imminent danger of becoming impaired" within the meaning of Family Court Act § 1012 (f) (i). We strongly disagree. According to the June 1993 psychological report prepared by court-ordered therapist Mark Vogel, Christina was diagnosed as "a significantly emotionally disturbed individual with a possible diagnosis of multiple personality disorder, or possible psychotic disorder with paranoid-like features". Based upon interviews, Vogel opined that William's extreme emotional attachment to his mother, coupled with his acute awareness of her "precarious state of emotional health", fostered the child's feeling that there must have been a reason for his mother to independently terminate visitation with his father. Already influenced by Christina and Allan, and aware that they had disposed of items brought back from his father as demon-possessed, Vogel opined that William began to "surmise that there was a connection between his mother's feelings towards his father, demons and possessions being demonized".

---

2. Jessica was reported to have had one episode of hearing voices and flashbacks in July 1993.

3. Family Court also issued orders of protection prohibiting Christina and Allan from contacting the children except in the context of supervised visitation.

It was further revealed that through the encouragement of both Christina and Allan, coupled with his awareness of Christina's recollections of satanic abuse, William began to have his own remembrances to validate his mother's emotional state. With this fertile ground in place, Vogel reported that Jessica began to have flashbacks as well. The result, as noted by Vogel, was as follows: "[T]here is a fair amount of psychotic-like delusion operating on the part of the mother and there is a shared delusion on the part of the children in support of their mother which is known as a Folie á Deux. * * * '[T]his disorder is a delusional system that develops in a second person as a result of a close relationship with another person (the primary case) who already has a psychotic disorder with a problem in delusions. The same delusions are at least partly shared by both persons * * * if the relationship with the primary person who has the psychotic disorder is interrupted, usually the delusional beliefs in the second person will diminish or disappear' " (citation omitted). Vogel opined that the children were residing in a psychologically unsafe environment which was tampering with their entire perception of reality. Additional documentary and testimonial evidence showed that the children were under a great deal of psychological stress, clearly detrimental to their emotional well-being, due to Christina's emotional state. Based upon the evidence presented, including the interviews of the children by the Family Court, we find that the record amply supports a finding that the mental and emotional health of these children were impaired as a result of the conduct of Christina and Allan.

As to Allan's contention that a finding of neglect against him is unsupported, we find that he fully participated in the encouragement and perpetuation of the children's delusions even after the medical evidence proved them to be unfounded (*see, Matter of Zariyasta S.,* 158 AD2d 45; *see also, Matter of Michelle S.,* 195 AD2d 721). Hence, given the deference to which Family Court's determination of credibility issues is entitled (*see, Matter of Michelle S., supra*), we find that the evidence amply supports a finding of neglect against Allan (*see,* Family Ct Act § 1012 [f] [i] [B]). As to the modification of the 1991 custody determination, we find that based upon the onset of the family's delusions, there was an adequate showing of "a sufficient change in circumstances demonstrating a real need for a change in order to insure the [children's] best interest" (*Matter of Muzzi v Muzzi,* 189 AD2d 1022, 1023). We note that the modification was in accordance with the recommendations of the Law Guardian and each of the mental health professionals, as well as the preference expressed by both children. Accordingly, we affirm all orders appealed from.

Mercure, J. P., Crew III, Yesawich Jr. and Spain, JJ., concur. Ordered that the orders are affirmed, without costs.