■ In the Matter of BILLY JEAN II., a Child Alleged to be Neglected. OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; RAY II., Appellant, et al., Respondent. [640 NYS2d 326] —Peters, J. Appeal from an order of the Family Court of Otsego County (Nydam, J.), entered September 7, 1994, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 10, to adjudicate Billy Jean II. a neglected child.

Respondents are the parents of Billy Jean II., born in 1989. As a result of four reports made to the State Central Registry of Child Abuse and Maltreatment (hereinafter State Central Registry) between November 1990 and July 1993, all alleging inadequate guardianship either due to domestic violence, poor hygiene, or unsanitary and unsafe living conditions, a neglect petition was filed on July 29, 1993 by petitioner. Hearings were held on March 10, 1994 and June 29, 1994, at the conclusion of which findings were made that Billy Jean was neglected

by respondent Ray II. (hereinafter respondent).[1] A dispositional order was entered on September 7, 1994 which, *inter alia*, placed the child in the custody of petitioner[2] and provided for visitation with respondent. Respondent now appeals, alleging that there was insufficient proof to sustain the finding of neglect.

We are satisfied, upon the evidence here presented, that there was sufficient proof to sustain the finding of Family Court (Family Ct Act § 1046 [b]; *see, Matter of Tammie Z.*, 105 AD2d 463, *lvs denied* 64 NY2d 611, 1111, *affd* 66 NY2d 1). Testimony at the fact-finding hearing primarily addressed an incident occurring on July 10, 1993 when respondent allegedly became intoxicated and violent, physically attacking respondent Colleen II. in the presence of the child.[3] State Troopers James La Plant and Thomas Ward interviewed Colleen from her hospital bed. She claimed that respondent had beat her with his fists and had choked her almost to the point of her becoming unconscious. Both officers observed her face to be swollen with bruising about the face and neck. The emergency room report, dated July 10, 1993, was admitted in evidence. Notations therein corroborate the Troopers' testimony as to Colleen's description of the incident. When La Plant and Ward arrived at respondent's trailer in the early morning hours of July 11, 1993, they testified that respondent appeared highly intoxicated. They testified that when they entered one of the bedrooms to get Billy Jean to bring her to Colleen at the hospital, due to their belief that the two other individuals in the trailer were not capable of properly caring for the child, they noticed clothing strewn about the floor and dirty dishes with encrusted food all over the kitchen, and thus described the living area as "disgusting".

Various preliminary and follow-up investigative reports made by petitioner, as well as reports made to the State Central Registry, were offered and admitted into evidence. Such reports document a history of domestic violence between respondent and Colleen in the presence of the child, describe

1. Respondent Colleen II. was originally named as a respondent in the petition. She later admitted the allegations in a proceeding held before Family Court on September 7, 1993. Therein she acknowledged that there was domestic violence in the household, that there had been inadequate and unsanitary housing conditions, and inadequate clothing for Billy Jean.

2. On or about July 26, 1993, Billy Jean was placed in the custody of petitioners and currently resides in a certified foster home. Colleen consented to such placement.

3. This incident was the basis for the last report received from the State Central Registry dated July 16, 1993.

respondent as "violent" with a "total disregard of others", and detail that due to respondent's alcohol and physical abuse, the child is "at risk". The reports describe Billy Jean as "dirty", inadequately dressed and unsafe due to the living conditions in the trailer. Included in such proffer was a report detailing the July 10, 1993 incident which corroborated the testimony given by the State Troopers. A follow-up report detailed Colleen's admission that the child was present at the time of the beating.

Respondent testified that although he is an alcoholic, he ceased drinking in 1985. While admitting that he consumed alcohol on July 10, 1993, he contended that during such time, Billy Jean was being cared for by Edward Dominic and that he was unaware of how Colleen received her injuries. He did admit that in April 1993, he was visited by Joyce Di Donna of petitioner who, after assessing the unsanitary condition of the trailer, gave him three days to clean it up. At such time, the trailer housed his truck engine and other automobile parts in the living room.

Dominic, a 72-year-old hearing-impaired friend of respondent, testified that he had never seen respondent drink alcohol or argue, hit, choke or be aggressive in any manner with Colleen. He stated, instead, that both he and respondent had raised Billy Jean and that he frequently babysat for her. Respondent also proffered the testimony of Colleen, who recanted all of her prior statements to the hospital, police and social workers. She testified that prior to her diagnosis and placement on medication approximately six months before, she consistently lied about respondent beating her. She now testified that he has never hit, kicked, punched or choked her. With respect to the incident which warranted her hospitalization on July 10, 1993, she claimed that an unknown individual attempted to rape her.

Mindful of the deference to which the findings of Family Court are entitled regarding issues of credibility (see, Matter of Wilbur O. v Christina P., 220 AD2d 842, 846), we find that the evidence amply supports a finding of neglect against respondent (see, Family Ct Act § 1012 [f] [i] [B]). Not only do we agree that the testimony of respondent, Dominic and Colleen were incredible, we find, as did Family Court, that the child at issue is a neglected child within the meaning of Family Court Act § 1012 "whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired" (Family Ct Act § 1012 [f] [i]) due to respondent's failure to provide her with proper clothing and shelter (Family Ct Act

§ 1012 [f] [i] [A]). We find proper Family Court's finding that the neglect determination is also based upon respondent's failure to provide the child with "proper supervision or guardianship * * * by misusing alcoholic beverage to the extent that he loses self-control of his actions" (Family Ct Act § 1012 [f] [i] [B]) and by the history of domestic violence occurring in the home, "acts of a similarly serious nature requiring the aid of the court" (*ibid.*). The lack of actual injury to the child does not preclude such finding (*see, Matter of Tammie Z.*, 105 AD2d 463, *supra*).

Mikoll, J. P., Mercure, Crew III and Yesawich Jr., JJ., concur. Ordered that the order is affirmed, without costs.